**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**FARMERS DIRECT PROPERTY AND CASUALTY**
**INSURANCE COMPANY**                                                              **PLAINTIFF**

**VS.**                                                    **CIVIL ACTION NO: 3:22cv188-KHJ-MTP**

**JONATHAN ELIJAH YATES**                                                        **DEFENDANT**

**MEMORANDUM BRIEF OF AUTHORITIES**
**IN SUPPORT OF PLAINTIFF FARMERS DIRECT PROPERTY**
**AND CASUALTY INSURANCE COMPANY'S MOTION**
**FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff Farmers Direct Property and Casualty Insurance Company (hereinafter "Farmers Direct") and files this its Memorandum Brief of Authorities In Support of its Motion for Summary Judgment in the above styled and referenced cause, and in support thereof would show unto the Court as follows:

**STATEMENT OF FACTS AND COVERAGE**

Plaintiff Farmers Direct Property and Casualty Insurance Company (hereinafter "Farmers Direct") and Defendant Elijah Yates (hereinafter "Defendant Yates") have entered into and filed an Agreed Stipulation of Facts in which they have agreed and stipulated to all relevant facts needed for this Court to decide the sole issue to be resolved in this matter, specifically whether or not Defendant Yates, as a Class II "insured" under the subject Farmers Direct policy, is entitled to stack the $100,000 per person Uninsured/Underinsured Motorist Coverage limits by the four (4) separate vehicles insured under that policy or whether Defendant Yates is limited to the single $100,000 per person limit provided on the vehicle in which Defendant Yates was riding at the time of the subject accident. [See ECF Doc. 5]. A copy of that Agreed Stipulation of Facts is attached hereto as Exhibit "A".

On July 18, 2020, Defendant Yates was riding as a guest passenger in a vehicle leased by Mitzi Birks and Garry Birks and being driven by their grandson Camron Flynn which was involved in a single vehicle accident on West Sowell Road in Madison County, Mississippi. The subject accident was caused by the negligence of Camron Flynn. [ECF Doc. #5, ¶1-2]

At the time of the subject accident, the vehicle being driven by Camron Flynn and occupied by Defendant Yates was insured under a personal automobile insurance policy issued by Farmers Direct Property and Casualty Insurance Company (formerly known as Metropolitan Direct Property and Casualty Insurance Company), bearing Policy No. 9564110730. A true and correct copy of the subject automobile insurance policy issued by Farmers Direct is attached hereto as Exhibit "B". [ECF Doc. #5, ¶3-4]

The subject personal automobile insurance policy issued by Farmers Direct provided Liability Coverage with a limit of $100,000 per person. Farmers Direct, on behalf of Mitzi and Gary Birks and Camron Flynn, has offered to pay, and Defendant Yates has agreed to accept, the $100,000 Liability Coverage limits provided under the subject Farmers Direct policy to Elijah Yates in full and final settlement of any and all claims that Mr. Yates may have against the Birks and/or Camron Flynn. [ECF Doc. #5, ¶5-9]

The subject automobile insurance policy issued by Farmers Direct Property Casualty Insurance Company also provided Uninsured/Underinsured Motorist Coverage with a limit of $100,000 per person, and that policy insured four (4) total vehicles. [ECF Doc. #5, ¶7]

As a guest passenger in the Farmers Direct insured's vehicle, Defendant Yates is considered an "insured" for purposes of Uninsured/Underinsured Motorist Coverage under that

policy, and more specifically and as will be discussed in more detail below, Defendant Yates is considered a Class II "insured" under the Farmers Direct policy. [ECF Doc. #5, ¶11]

In addition to being an "insured" for purposes of Uninsured/Underinsured Motorist Coverage under the aforementioned Farmers Direct policy, Defendant Yates is also insured under two (2) other separate personal automobile insurance policies issued by State Farm Mutual Automobile Insurance Company, both of which provided $25,000 per person Uninsured/Underinsured Motorist Coverage limits. As a resident family member of State Farm Mutual Automobile Insurance Company's named insureds, Defendant Yates has a total of $50,000 in Uninsured/Underinsured Motorist Coverage under those two (2) insurance policies issued by State Farm Mutual Automobile Insurance Company. [ECF Doc. #5, ¶12-13]

The tortfeasor or at-fault driver who caused this accident, Camron Flynn, has $100,000 per person Liability Coverage limits applicable for Defendant Yates' claim. Additionally, Defendant Yates has $150,000 in total applicable Uninsured/Underinsured Motorist Coverage limits as set forth above ($100,000 per person Uninsured/Underinsured Motorist Coverage limits under the Farmers Direct policy and $50,000 in Uninsured/Underinsured Motorist Coverage limits under the two (2) aforementioned State Farm Mutual Automobile Insurance Company policies). As will be discussed in more detail below, because Defendant Yates' Uninsured/Underinsured Motorist Coverage limits exceed the tortfeasor's Liability Coverage limits, the tortfeasor (Camron Flynn) is "underinsured" and thus constitutes an uninsured motorist and/or underinsured motorist under Mississippi law. ECF Doc. #5, ¶14-15]

Defendant Elijah Yates contends that he is entitled to "stack" or aggregate the $100,000 per person Uninsured/Underinsured Motorist Coverage limits provided under the subject policy issued by Farmers Direct Property and Casualty Insurance Company pursuant to the Mississippi

Court of Appeals' opinion in *Brewer vs. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.3d 721 (Miss. Ct. App. 2021), such that there is $400,000 in stacked Uninsured/Underinsured Motorist Coverage limits available to him under the subject policy issued by Farmers Direct, and that after offsetting the aforementioned $100,000 Liability Coverage payment made by Farmers Direct on behalf of Camron Flynn, Defendant Yates is entitled to the recovery of $300,000 in remaining Uninsured/Underinsured Motorist Coverage from Farmers Direct for the injuries he allegedly sustained as a result of the subject accident[1]. [ECF Doc. #5, ¶17] However, on the other hand and to the contrary, Farmers Direct contends that, as a guest passenger in the Farmers Direct insured vehicle, Defendant Yates is considered a Class II insured under the Farmers Direct policy and that, as a Class II insured, pursuant to the Mississippi Supreme Court opinion in *Meyers vs. American States Ins. Co.*, 914 So.2d 669 (Miss. 2005) and the Mississippi Court of Appeals opinion in *Brewer vs. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.3d 721 (Miss. Ct. App. 2021), Defendant Yates is <u>not</u> entitled to "stack" the $100,000 per person Uninsured/Underinsured Motorist Coverage limits provided under the subject Farmers Direct policy, but rather is limited to the recovery of the single $100,000 per person

---

[1] Farmers Direct and Defendant Yates have stipulated that "Farmers Direct Property and Casualty Insurance Company, as an Uninsured/Underinsured Motorist carrier, is entitled to a Liability set off or offset, sometimes referred to as the "*Keuhling* or set off or offset", for the $100,000 Liability Coverage being paid to Elijah Yates against any Uninsured/Underinsured Motorist Coverage which may be owed by Farmers Direct Property and Casualty Insurance Company under the subject policy. [ECF Doc. #5, ¶11] In further support of Farmers Direct's legal right to offset any Liability Coverage payment made to Defendant Yates against Farmers Direct's Uninsured/Underinsured Motorist Coverage limits, Farmers Direct would show that its LIMIT OF LIABILITY provisions under the subject Uninsured/Underinsured Motorist Coverage endorsement provide as follows:

   B. The lesser of the limits of this insurance or the amount payable under this
      endorsement will be reduced by any amount:

   (1) Paid or which is payable on behalf of any liable parties.
   *******************************************************

   (3) Paid or which is payable under the:
      a.   Liability Coverage:
   *******************************************************
   of this policy.

   [See Exhibit B]

Uninsured/Underinsured Motorist Coverage limits, and that, after offsetting the aforementioned $100,000 Liability Coverage limit being paid to Defendant Yates by Farmers Direct, Farmers Direct does not know any Uninsured/Underinsured Motorist Coverage to Defendant Yates for the injuries allegedly sustained as a result of the subject accident.  [ECF Doc. #5, ¶18]

The sole issue for this Court to resolve is whether or not Defendant Yates, as a Class II insured under the Farmers Direct policy, is entitled to stack the $100,000 per person Uninsured/Underinsured Motorist Coverage limit by the four (4) separate vehicles insured under that policy or whether Defendant Yates is limited to the single $100,000 limit provided on the vehicle involved in the subject accident.  [ECF Doc. #5, ¶19]

## ARGUMENT AND AUTHORITIES[2]

Miss. Code Ann. §83-11-103(b) defines the term "insured" for purposes of Uninsured/Underinsured Motorist Coverage as follows:

> (b) The term "insured" shall mean the named insured, and while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any other person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and <u>a guest passenger in such motor vehicle to which the policy applies,</u> or the personal representative of any of the above.  The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.

> Miss. Code Ann. §83-11-103(b)

As stated above and as stipulated by the parties herein, because Defendant Yates was a guest passenger in the Farmers Direct insured vehicle, Defendant Yates is considered an

---

[2] In an action based upon diversity of citizenship, a federal court must apply the substantive law of the state in which it sits. See *Bolden-Gardner v Liberty Mut. Ins. Co*., 2021 U.S. Dist. LEXIS 48, 2021 WL 22419 (D. Maryland January 4, 2021 (citing *Klaxon Co. v Stentor Elect. Mfg. Co.* 313 U.S. 487, 496-97, 61 S. Ct. 2020, 85 L. Ed. 1477 (1941)).

"insured" for purposes of Uninsured/Underinsured Motorist Coverage under the subject Farmers Direct policy.

**Defendant Elijah Yates Is A Class II Insured Under The Subject Farmers Direct Policy**

Under Mississippi law, there are two (2) different classes of insureds for purposes of Uninsured/Underinsured Motorist Coverage. The named insured and, while residents of the same household, the spouse of the named insured and relatives of either are considered Class I insureds. *Meyers vs. American States Ins. Co.*, 914 So.2d 669, 675 (¶15) Miss. 2005) (citing Miss. Code Ann. §86-11-103(b)). On the other hand, guest passengers in and permissive users of the insured vehicle are considered Class II insureds. *Id.* Thus, as a guest passenger in the Farmers Direct insured vehicle, Defendant Yates is considered a Class II insured for purposes of Uninsured/Underinsured Motorist Coverage under the subject Farmers Direct policy.

**The Tortfeasor Or At-Fault Driver Is Considered An "Uninsured" Or "Underinsured" Motorist**

Miss. Code Ann. §83-11-103(c) defines an "uninsured motor vehicle" as follows:

(i) A motor vehicle as to which there is no bodily injury liability insurance; or

(ii) A motor vehicle as to which there is such insurance in existence, but the insurance company writing the same has legally denied coverage thereunder or is unable, because of being insolvent at the time of or becoming insolvent during the twelve (12) months following the accident, to make payment with respect to the legal liability of its insured; or to may payment with respect to the legal liability of its insured; or

(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage; or

(iv) A motor vehicle as to which there is no bond or deposit of cash or securities in lieu of such bodily injury and property damage liability insurance or other compliance with the state financial responsibility law, or where there is such bond or deposit of cash or securities, but such bond or deposit is less than the legal liability of the injuring party; or

(v) A motor vehicle of which the owner or operator is unknown; provided that in order for the insured to recover under the endorsement where the owner or operator of any motor vehicle which causes bodily injury to the insured is unknown, actual physical contact must have occurred between the motor vehicle owned or operated by such unknown person and the person or property of the insured.

No vehicle shall be considered uninsured that is owned by the United States government and against which a claim may be made under the Federal Tort Claims Act, as amended.

Miss. Code Ann. §83-11-103(c)

In general terms, when a tortfeasor does not have any liability insurance coverage, that tortfeasor is considered "uninsured", and when the tortfeasor does have some Liability Coverage, but the tortfeasor's Liability Coverage limits are less than the insured's total applicable Uninsured/Underinsured Motorist Coverage limits, the tortfeasor is considered "underinsured". *Washington vs. Georgia Am Ins. Co*., 540 So.2d 22 (Miss. 1989). In order to determine if the tortfeasor is an "underinsured" motorist, one must compare the tortfeasor's liability limits to the claimant's/insured's total applicable Uninsured Motorist Coverage limits. *Id.* If the tortfeasor's liability limits are greater than the insured's/claimant's Uninsured/Underinsured Motorist Coverage limits, then the tortfeasor is not "underinsured" and thus is not an "uninsured motorist" as defined under Miss. Code Ann. §83-11-103(c); however, if the tortfeasor's Liability Coverage limits are less than the total applicable Uninsured/Underinsured Motorist Coverage limits available or applicable to the insured/claimant, then the tortfeasor is considered "underinsured" and thus an "uninsured motorist" as defined under Miss. Code Ann. §83-11-103(c). *Id.* Here in the case at hand, as noted above, the parties have stipulated that Camron Flynn has $100,000 per person Liability Coverage limits applicable to Defendant Yates' claim and that Defendant Yates has total

applicable Uninsured/Underinsured Motorist Coverage limits of $150,000 ($100,000 under the Farmers Direct policy and $50,000 under Defendant Yates' separate policies issued by State Farm Mutual Automobile Insurance Company). As Defendant Yates Uninsured/Underinsured Motorist Coverage limits of $150,000 exceed Camron Flynn's $100,000 Liability Coverage limits, Camron Flynn is "underinsured" under Mississippi law and thus an "uninsured motorist" under Mississippi law. As such, the parties agree that Defendant Yates has a valid uninsured/underinsured motorist claim as a result of the subject accident. However, the question remains to be decided by this Court, whether Defendant Yates is entitled to the recovery of any Uninsured/Underinsured Motorist Coverage from Farmers Direct under the subject Farmers Direct policy.

**Mississippi Rules Regarding The Stacking Of Uninsured/Underinsured Motorist Coverage**

For many years, whether drivers or passengers could stack uninsured/underinsured motorist coverage was the subject of much litigation in Mississippi. In *Wickline vs. USF&G*, 530 So.2d 708 (Miss. 1988), *Thiac vs. State Farm Mut. Auto. Ins. Co*., 569 So.2d 1217 (Miss. 1990), and *State Farm Mut. Auto. Ins. Co. vs. Davis*, 613 So.2d 1179 (Miss. 1993), the Mississippi Supreme Court began rendering the rules of stacking applicable to uninsured motorist claims and the differences between Class I insureds and Class II insureds in doing so. Those rules have been succinctly summarized in the federal court opinion of *Mascarella vs. USF&G*, 71 So.2d 598 (S.D. Miss. 1999).

Previously in Mississippi, for underinsured motorist claims, there were two different types of stacking: (1) stacking for the purpose of determining whether a vehicle is "underinsured" (generally referred to as the "UM status question" or "trigger question") and

(2) stacking for the purposes of recovering damages (generally referred to as the "UM recovery fund").

In *Wickline, Thiac,* and *Davis*, *supra*, the Mississippi Supreme Court noted that the stacking of Uninsured Motorist Coverage for purposes of determining whether a vehicle or driver is "underinsured" is different from the stacking of Uninsured Motorist Coverage for the purpose of recovering damages. And the amount of Uninsured Motorist Coverage limits were different for each question/determination, and the methods and limitations on stacking were different when making the determination of whether there was a valid uninsured motorist claim versus, once the claim had been determined to be a valid uninsured motorist claim, the determination of the amount of Uninsured Motorist Coverage limits available for purposes of recovery. *Id.* Further, determining when and how much stacking was allowed for both purposes was determined by whether the insured was a Class I insured or a Class II insured as set forth above. *Id.* In *Wickline*, *Thiac*, and *Davis*, the Mississippi Supreme Court held that, for purposes of determining whether there was a valid underinsured motorist claim, Class I insureds (the named insured and resident family members) could stack the uninsured motorist coverage on a multi-vehicle policy by the number of vehicles insured under that policy and combine that with any other uninsured motorist policies applicable to the insured, in order to determine the total applicable Uninsured Motorist Coverage limits of the Class I insured. However, in those cases, the Mississippi Supreme Court held that, for purposes of determining whether there was a valid underinsured motorist claim, Class II insureds (permissive users and guest passengers) were limited to the single limit of Uninsured/Underinsured Motorist Coverage provided under the policy insuring the vehicle involved in the accident and that the insured could combine or aggregate that single limit provided under that policy with the

coverage provided under any other uninsured/underinsured motorist policies applicable to the insured. *Id.* If, under that calculation, the insured's Uninsured/Underinsured Motorist Coverage limits were less than the tortfeasor's Liability Coverage limits, then the tortfeasor was not "underinsured", and the insured's/claimant's did not have a valid Uninsured/Underinsured Motorist claim. However, on the other hand, if under that calculation the insureds/claimants total applicable Uninsured/Underinsured Motorist Coverage limits were higher than or exceeded the tortfeasor liability coverage limits, the tortfeasor was "underinsured", and the insured/claimant did have a valid Uninsured/Underinsured Motorist claim.

Under the stacking rules set forth by the Mississippi Supreme Court in *Wickline, Thiac,* and *Davis,* if the tortfeasor was "underinsured", then both Class I insureds and Class II insureds were entitled to stack the Uninsured/Underinsured Motorist Coverage limits provided under the policy in which the Class II insured was riding as a guest passenger by the number of vehicles insured under that policy. *Id.*

For example, under the prior stacking rules, if in the case at hand Defendant Yates had $50,000 in UM/UIM coverage available under the Farmers Direct policy and $50,000 in UM coverage under his two (2) State Farm policies, Defendant Yates would have $100,000 in total applicable UM coverage, and when comparing that to Camron Flynn's $100,000 Liability Coverage limits, because those limits are equal and the UM limits are not higher than the Liability Coverage limits, then Camron Flynn would not be considered "underinsured", and Defendant Yates would not have a valid Uninsured/Underinsured Motorist Coverage claim. However, under those prior stacking rules, if Defendant Yates had $100,000 UM/UIM Coverage limits under the Farmers Direct policy plus $50,000 in UM Coverage limits under his

State Farm policies, for a total of $150,000 combined UM/UIM Coverage limits, when comparing that to Camron Flynn's Liability Coverage limits of $100,000, because Defendant Yates UM/UIM limits exceeded or were greater than Camron Flynn's Liability Coverage limits, Camron Flynn would be considered an "underinsured" motorist, and Defendant Yates would have a valid Underinsured Motorist Coverage claim. Then, under the <u>prior</u> stacking rules set forth in *Wickline, Thiac,* and *Davis,* Defendant Yates would have been entitled to have stacked the $100,000 UM/UIM Coverage limits provided under the Farmers Direct policy by the four (4) separate vehicles insured under that policy, such that Defendant Yates would have $400,000 in stacked Uninsured/Underinsured Motorist Coverage limits available to him under the Farmers Direct policy for purposes of recovery. (However, as the parties have stipulated and agreed, Farmers Direct would be entitled to offset its $100,000 Liability Coverage limit against those $400,000 stacked per person Uninsured/Underinsured Motorist Coverage limits, such that Farmers Direct would have remaining available uninsured/underinsured motorist coverage limit of $300,000 available to compensate Defendant Yates for the injuries he sustained in this accident.)

**However, those <u>prior</u> stacking rules of the Mississippi Supreme Court have since been overruled and are no longer applicable. (Emphasis added)**

In *Meyers vs. Am. States Ins. Co.*, 914 So.2d 669, 675 (¶20) the Mississippi Supreme Court held the following:

> We therefore explicitly state what we implied with our holding in *Mascarella.* To the extent our previous decisions held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted, they are overruled. See, e.g., *Glennon*, 812 So.2d at 931-33; *McDaniel v. Shaklee United States, Inc.*, 807 So.2d 393, 395-99 (Miss. 2001); *State Farm Mut. Auto. Ins. Co. v. Davis*, 613 So.2d 1179, 1182 (Miss. 1992); *Thiac v. State Farm Mut. Auto. Ins. Co.*, 569 So.2d 1217, 1220-21 (Miss. 1990); *Harris v. Magee*, 573 So.2d 646, 654-

55 (Miss. 1990); *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879, 883-84 (Miss. 1989); *Wickline v. United States Fid. & Guar. Co.*, 530 So.2d 708, 714-15 (Miss. 1988); *Brown v. Md. Cas. Co.,* 521 So.2d 854, 855-56 (Miss. 1987); *see also Box v. State Farm Mut. Auto. Ins. Co.*, 692 So.2d 54, 58 (Miss. 1997) (declining to overrule *Davis*); *Miss. Farm Bureau Cas. Ins. Co. v. Curtis*, 678 So.2d 983, 988-89 (Miss. 1996) (citing *Davis* with approval); *Meadows v. Miss. Farm Bureau Ins. Co.*, 634 So.2d 108, 110-11 (Miss. 1994) (citing *Davis* with approval); *but see McDaniel*, 807 So.2d at 399-401 (Smith, J., dissenting) (noting the absurd result of affording $17,580,000.00-worth of uninsured motorist coverage for a Class II employee when the employer only paid a $78.50 premium for the coverage).

*Meyers*, 669, 675 (¶20), (Miss. 2005).

Thus, in the *Meyers* opinion, the Mississippi Supreme Court overruled and withdrew all of those prior cases, including but not limited to *Wickline, Thiac*, and *Davis*, which held that a Class II insured was entitled to stack the Uninsured/Underinsured Motorist Coverage limits provided under a policy which insured multiple separate vehicles and/or for which multiple separate premiums were paid. Now, under the <u>new and present</u> stacking rules, Class II insureds cannot multiple or stack the Uninsured/Underinsured Motorist Coverage limits provided under a multi-vehicle policy, but rather now under the <u>new and present</u> stacking rules, Class II insureds are limited to the single per person Uninsured/Underinsured Motorist Coverage limit provided under that multi-vehicle policy. More specifically, in *Meyers*, the Mississippi Supreme Court did away with the two separate questions one had to previously ask in regards to UM claims (1) stacking for purposes of determining whether or not the tortfeasor was underinsured and (2) stacking for purposes of recovery if it was determined that the tortfeasor was underinsured under the first question. Now, under the new and present stacking rules, Class I insureds were entitled to stack the Uninsured/Underinsured Motorist Coverage limits provided under a multi-vehicle policy by the number of vehicles insured under that policy; however, <u>Class II insureds are now no longer entitled to stack the Uninsured/Underinsured Motorist Coverage limits</u>

provided under a multi-vehicle policy but rather are limited to the single per person limits stated under that multi-vehicle policy and entitled to stack that single per person Uninsured/Underinsured Motorist Coverage limit with the Uninsured/Underinsured Motorist Coverage limits available to the insured/claimant under any other separate policy they may provide Uninsured/Underinsured Motorist Coverage to the insured/claimant. In other words, in the case at hand, Defendant Yates is only entitled to the $100,000 per person Uninsured/Underinsured Motorist Coverage limit provided under the subject Farmers Direct policy, whether that be for purposes of determining whether Camron Flynn is "uninsured" and/or for purposes of recovery. Simply stated, Defendant Yates is limited to only receiving and/or recovering the single $100,000 per person Uninsured/Underinsured Motorist Coverage limit provided under the subject Farmers policy (and then after offsetting the $100,000 Liability Coverage payment being made by Farmers Direct, Farmers Direct has no exposure for or obligation to pay any Uninsured/Underinsured Motorist Coverage limits to Defendant Yates for the injuries he sustained in the subject accident).

Further, as will be discussed in more detail below, that ruling of the Mississippi Supreme Court in *Meyers* has since been upheld and affirmed by other opinions, including but not limited to the recent Mississippi Court of Appeals opinion in *Brewer vs. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.2d 721 (Miss. Ct. App. 2021).

A. **Defendant Yates, As A Class II Insured, Under The Subject Farmers Direct Policy, Is Not Entitled To Stack The Uninsured/Underinsured Motorist Coverage Limits Provided Under The Farmers Direct Policy By The Four (4) Separate Vehicles Insured Under The Farmers Direct Policy, But Rather Is Limited To The Single $100,000 Per Person Uninsured/Underinsured Motorist Coverage Limit Provided Under the Policy**

As noted above, in *Meyers*, the Mississippi Supreme Court overruled and withdrew all of its prior opinions which previously held that, if the tortfeasor was "underinsured" under the UM status question/trigger question, then a Class II insured was entitled to stack the Uninsured/Underinsured Motorist Coverage limits by the number of vehicles insured under that policy for purposes of recovery. More specifically, in Meyers, the Supreme Court stated:

> We therefore explicitly state what we implied with our holding in *Mascarella* to the extent our previous decisions held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted, they are overruled. See, e.g., *Glennon*, 812 So.2d at 931-33; *McDaniel v. Shaklee United States, Inc.*, 807 So.2d 393, 395-99 (Miss. 2001); *State Farm Mut. Auto. Ins. Co. v. Davis*, 613 So.2d 1179, 1182 (Miss. 1992); *Thiac v. State Farm Mut. Auto. Ins. Co.*, 569 So.2d 1217, 1220-21 (Miss. 1990); *Harris v. Magee*, 573 So.2d 646, 654-55 (Miss. 1990); *Cossitt v. Nationwide Mut. Ins. Co*., 551 So.2d 879, 883-84 (Miss. 1989); *Wickline v. United States Fid. & Guar. Co.*, 530 So.2d 708, 714-15 (Miss. 1988); *Brown v. Md. Cas.  Co.*, 521 So.2d 854, 855-56 (Miss. 1987); *see also Box v. State Farm Mut. Auto. Ins. Co*., 692 So.2d 54, 58 (Miss. 1997) (declining to overrule *Davis*); *Miss. Farm Bureau Cas. Ins. Co. v. Curtis*, 678 So.2d 983, 988-89 (Miss. 1996) (citing *Davis* with approval); *Meadows v. Miss. Farm Bureau Ins. Co.*, 634 So.2d 108, 110-11 (Miss. 1994) (citing *Davis* with approval); *but see McDaniel*, 807 So.2d at 399-401 (Smith, J., dissenting) (noting the absurd result of affording $17,580,000.00-worth of uninsured motorist coverage for a Class II employee when the employer only paid a $78.50 premium for the coverage).

*Meyers*, 669, 675 (¶20), (Miss. 2005).

In short, in *Meyers*, the Mississippi Supreme Court clearly did away with Class II stacking of Uninsured/Underinsured Motorist Coverage benefits by the number of vehicles insured under a particular policy, and the new rule in Mississippi is that Class II insureds are <u>not</u> allowed to stack or multiple the Uninsured/Underinsured Motorist limits by the number of vehicles insured under a particular policy. So, again, in the case at hand, Defendant Yates is limited to receiving the single $100,000 per person Uninsured/Underinsured Motorist Coverage limit provided under the subject Farmers Direct policy, and after offsetting the $100,000

Liability Coverage payment being made by Farmers Direct under its Liability Coverage, Defendant Yates is not entitled to any Uninsured/Underinsured Motorist Coverage under the subject Farmers policy for the injuries he sustained in the subject accident.

The undersigned counsel for Farmers Direct respectfully submits that, since the *Meyers* ruling came down back in 2005, for the past seventeen (17) years, both plaintiff counsel and defense counsel around the State have all agreed that Class II insureds are no longer entitled to stack the Uninsured/Underinsured Motorist Coverage limits provided under a particular policy by the number of vehicles insured or listed under that policy but rather are limited to the single per person Uninsured/Underinsured Motorist Coverage limits stated on the Declarations Page to any particular policy.  Moreover, the undersigned counsel for Farmers Direct represents that counsel for Defendant Yates would agree with that assertion.

Additionally, just recently in 2021, in *Brewer vs. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.2d 721, the Mississippi Court of Appeals upheld the *Meyers* rule that Class II insureds are no longer entitled to stack the Uninsured/Underinsured Motorist Coverage limits provided under the policy by the number of vehicles insured under that policy…as long as the policy being interpreted has valid anti-stacking language set forth in it.  *Brewer*, 328 So.3d at ¶18-23.

In *Brewer* as in the case at hand, the issue for the Court of Appeals to decide was whether a passenger may stack the uninsured motorist (UM) benefits of any other vehicles covered under the same insurance policy as the host car.  *Id.* at ¶1. In *Brewer*, the tortfeasor had $25,000 in Liability Coverage.  Brewer, the plaintiff, had personal UM coverage of $75,000 through her parents' insurance policy.  Farm Bureau insured the vehicle in which Brewer was riding as a guest passenger at the time of the accident, and the Farm Bureau policy also provided $25,000 in Uninsured Motorist benefits and insured three (3) additional vehicles, for a

total of four (4) vehicles insured under the Farm Bureau policy.  Thus Brewer had UM Coverage of $75,000 applicable to her under her parents' policy and at least $25,000 in UM Coverage applicable to her under the Farm Bureau policy as a guest passenger under the Farm Bureau policy, for a total of $100,000 in applicable UM Coverage.  And when comparing that to the tortfeasors only having $25,000 in Liability Coverage, the tortfeasor was "underinsured".  As such, Brewer and her attorney then argued that Brewer was then entitled to stack the $25,000 in UM Coverage under the Farm Bureau policy by the four (4) vehicles insured under the Farm Bureau policy, such that she was entitled to $100,000 in stacked UM coverage from Farm Bureau.  Farm Bureau, citing *Meyers*, disagreed and held that Brewer was only entitled to the single $25,000 UM Coverage limit provided under the Farm Bureau policy.  Farm Bureau moved for Summary Judgment on that issue, and the trial court granted Summary Judgment to Farm Bureau, finding that Brewer was not entitled to stack the UM Coverage under the Farm Bureau policy by the four (4) vehicles insured under that policy, but rather was limited to the single $25,000 per person UM Coverage limit available on the vehicle she was riding in at the time of the accident.

Brewer and her attorney appealed the trial court's ruling to the Mississippi Court of Appeals which reversed the trial court's grant of Summary Judgment and remanded the case back to the trial court for further proceedings.  However, it is important to note the basis for the Court of Appeals' reversal.

In *Brewer*, the Mississippi Court of Appeals noted that, in *Meyers,* the Supreme Court ruled that insurers were now allowed to prohibit stacking by Class II insureds and that insurance contracts may prohibit stacking by a Class II insured…as long as the policy specifically includes express anti-stacking language, and the Court of Appeals went on to hold that, if a

policy does not contain anti-stacking language, then the insurer may not prohibit Class II stacking but rather the Class II insured is entitled to stack the UM limits provided under that policy by the number of vehicles insured under the policy. *Brewer*, 328 So.3d at ¶17-18 and ¶21.

More specifically, in *Brewer,* the Court of Appeals, in reaffirming and following the *Meyers* opinion, held in pertinent part as follows:

> P17.   That decision overruled eleven (11) earlier cases to the extent that those "decisions held Class II insureds were entitled to stack Uninsured Motorist benefits beyond those for which a named insured contracted". *Id.* at 675 (¶20) (emphasis added)**.**   In interpreting the Uninsured Motorist Statute, the Supreme Court ruled insurers were now allowed to prohibit stacking by Class II Insureds. *Id.* at 677. (¶26).

> *C.*   *Stacking Under the Uninsured Motorist Policy*

> P18.   Since its 2005 *Meyers* decision, the Mississippi Supreme Court has allowed insurance contracts to prohibit stacking by a Class II insured like Brewer.  Even though allowed, by its express terms, the contract at hand contains no such anti-stacking provision for UM benefits.

> *Id.* at ¶17 and 18

**************************************************************

> P.21.  During oral argument, the insurer also emphasized that Court should construe the policy as containing and express prohibition on stacking.  However, "this Court does not re-write contracts where they are legal, immoral, or contrary to established public policy." *Travelers Indem. Co. vs. Chappell*, 246 So.2d 498, 510 (Miss. 1971).If Farm Bureau wished to exclude stacking of UM benefits by passengers, it was permitted to do so by the Supreme Court under *Meyers*.  Further, if Farm Bureau intended to exclude guest passengers from stacking UM benefits, it could have explicitly done so in the policy.  Because it did not, we declined to re-write the policy on its behalf.  Accordingly, we find that the absence of an express prohibition on stacking allows Brewer to stack the UM benefits of the vehicles insured under the same policy. *Id.* at ¶17-18-20

So, in *Brewer, t*he Mississippi Court of Appeals affirmed and reiterated the Mississippi Supreme Court's ruling in *Meyers* that insurers are allowed to prohibit Class II insureds from stacking the UM/UIM coverage limits provided in a policy by the number of vehicles insured under that policy so long as the policy includes express anti-stacking language. However, the *Brewer* Court reversed Summary Judgment in favor of Farm Bureau in that case on the grounds that Farm Bureau's policy did not include express anti-stacking language in its policy, and because the Farm Bureau policy failed to include anti-stacking language in its policy, Brewer was entitled to stack the UM limits provided under the policy by the number of vehicles insured on the policy. *Id.* at ¶23

So, as the *Brewer* Court noted, an insurer, such as Farmers Direct in the instant case, can prohibit Defendant Yates, as a Class II insured, from stacking the Uninsured/Underinsured Motorist Coverage limits provided in the Farmers Direct policy by the four (4) separate vehicles insured, under that policy and limit Defendant Yates to only having the single $100,000 per person Uninsured/Underinsured Motorist Coverage limit applicable and/or available to his present claim, so long as the Farmers Direct policy contains valid anti-stacking language in it. Further, as will be discussed in more detail below, the Farmers Direct policy at issue in this case clearly and unambiguously provides express anti-stacking language in it, such that Defendant Yates is not entitled to stack the $100,000 per person UM/UIM Coverage limits provided under the policy by the four (4) separate vehicles insured but rather Defendant Yates is limited to only having $100,000 per person UM Coverage applicable to his claim.

It is important to note that the above ruling by the Mississippi Court Appeals in *Brewer* was the Majority Opinion and thus the binding and effective ruling of the Court of Appeals. However, Brewer and his counsel have previously indicated their own reliance upon the

Concurring Opinion issued by Judge Wilson of the Mississippi Court of Appeals. In his Concurring Opinion, Judge Wilson erroneously stated that Mississippi still follows and applies the prior two question analysis of stacking in UM/UIM claims, and that in any UM/UIM claim the parties must first determine (1) whether the tortfeasor is underinsured (the UM status or trigger question) and (2) if the tortfeasor is underinsured, how much UM/UIM coverage is available for purposes of recovery (the pre-*Meyers* rules which have since been overruled and withdrawn by the Mississippi Supreme Court in *Meyers*). In his Concurring Opinion and applying those old and withdrawn questions/rules, Judge Wilson reiterated the prior rules that (1) for purposes of determining whether the tortfeasor is underinsured, Class II insureds do not stack the UM/UIM limits provide under a policy by the number of vehicles insured but that (2) if the tortfeasor is found to be underinsured under that first question, then the Class II insured is entitled to stack the UM/UIM limits provided under a policy by the number of vehicles insured under that policy. In doing so, Judge Wilson noted that in *Meyers*, although the Mississippi Supreme Court overruled *Wickline, Thiac,* and *Davis*, and a long string cite of other cases upholding those rules, the *Meyers* Court did not overrule the Supreme Court's prior opinion in *Fidelity and Guaranty Underwriters Inc. vs. Earnest*, 699 So.2d 585 (Miss. 1997). In *Earnest*, an opinion issued by the Mississippi Supreme Court back in 1997, the Supreme Court had reiterated its prior rulings in *Wickline and Thiac* that, once the tortfeasor was determined to be underinsured, a Class II insured was entitled to stack the UM/UIM limits provide under a policy by the number of vehicles of insured under that policy for purposes of recovery. Judge Wilson went on to hold that, because *Earnest* had not been overruled by the Supreme Court in *Meyers*, *Earnest* was still good law and should be followed, and thus that Defendant Yates would be

entitled to stack the Farmers Direct UM limits by the four (4) separate vehicles insured under the Farmers Direct policy.

However, with all due respect to Judge Wilson, in so ruling in his Concurring Opinion, Judge Wilson overlooked one very important fact. In *Earnest*, the Mississippi Supreme Court did not establish any new rules of stacking, but rather in *Earnest*, the Supreme Court only reiterated its prior rulings in *Wickline* and *Thiac* that, if a tortfeasor was deemed to be underinsured under the UM status/trigger question, then a Class II insured was entitled to stack the UM limits provided under a policy by the number of vehicles insured under that policy. See *Earnest*, 699 So.2d at ¶ 19. In other words, in *Earnest,* the Supreme Court simply reiterated its prior rulings in *Wickline* and *Thiac.* However, what Judge Wilson respectfully failed to recognize in his Concurring Opinion in *Brewer* was that in *Meyers* the Supreme Court specifically overruled and withdrew the *Wickline* and *Thiac* opinions upon which Earnest was based. Although the Supreme Court admittedly failed to include the *Earnest* opinion in the string cite of cases that it was overruling and withdrawing in the *Meyers* opinion, that does not change the fact that the *Earnest* case was simply reiterating the holdings in *Wickline* and *Thiac* which the Mississippi Supreme Court did in fact overrule and withdraw in the *Meyers* opinion. In other words, the entire basis for *Earnest* (*Wickline* and *Thiac*) has been withdrawn and overruled, and thus the *Earnest* ruling regarding stacking by Class II insureds is no longer valid law and has no legal basis anymore.

Defendant Yates and his counsel presently argue that, pursuant to Judge Wilson's Concurring Opinion in *Brewer*, the *Earnest* Opinion of the Supreme Court has not been overruled and is thus still binding law, allowing a Class II insured to stack UM/UIM limits by the number of vehicles insured under a policy for purposes of recovery. However, to the

contrary, it is very important for this Court to note that in *Brewer*, Brewer was a "stacking for purposes of recovery" case, and the Majority Opinion of the Court of Appeals still held that, even though the tortfeasor in that case was "underinsured", a Class II insured is still not entitled to stack Uninsured/Underinsured Motorist Coverage by the number of vehicles insured under a policy by the number of vehicles insured under that policy. Remember, as noted above, that in the Majority Opinion, the Court appeals noted that the tortfeasor had $25,000 in Liability Coverage, that Brewer had $75,000 in UM Coverage under her parents' policy, and that Brewer had at least $25,000 in Uninsured Motorist Coverage under the Farm Bureau policy (for a total of $100,000 in UM Coverage) so, the tortfeasor in *Brewer* was clearly "underinsured" inasmuch as Brewer's UM/UIM Coverage limits exceeded the tortfeasor's Liability Coverage limits. However, despite that, the Court of Appeals still held that "insurers were now allowed to prohibit stacking by Class II insureds" for purposes of recovery. Despite the fact that the tortfeasor was underinsured, the Court of Appeals still held that "If Farm Bureau wished to exclude the stacking of UM benefits by passengers, it was permitted to do so by the Supreme Court under *Meyers*." Id. at ¶21.

In other words, in *Brewer*, the tortfeasor had already been deemed "underinsured" under the UM status/trigger question, but despite that, the Mississippi Court of Appeals in its Majority Opinion still held that Farm Bureau could have prohibited Ms. Brewer from stacking its UM limits by the number of vehicles insured under its policy if Farm Bureau had included express anti-stacking language in its policy. (It was only because Farm Bureau failed to include anti-stacking language in its policy that the Supreme Court allowed Brewer to stack the Farm Bureau limits by the number of vehicles insured.) *Id.*

All of this is to say that the Majority Opinion in *Brewer* is the binding law which this Court should follow, and in the Majority Opinion, the Mississippi Court of Appeals clearly held that a UM carrier such as Farmers Direct herein is entitled to prohibit Class II insureds from stacking the UM/UIM coverage provided under its policy as long as the policy includes valid anti-stacking language in it. To the contrary, Judge Wilson's Concurring Opinion is only a Concurring Opinion and not binding upon this Court, and more importantly, in his Concurring Opinion, Judge Wilson erroneously relied on *Earnest* although the whole basis for *Earnest* (*Wickline* and *Thiac*) had been overruled by the Mississippi Supreme Court in *Meyers*. Thus, as long as Uninsured/Underinsured Motorist carriers such as Farmers Direct herein have valid anti-stacking language in their policy, Class II insureds are <u>not</u> entitled to stack the UM limits provided under any given policy by the number of vehicles insured under that policy, and as applicable to the claims herein, Defendant Yates should not be entitled to stack the Uninsured/Underinsured Motorist Coverage limits under the Farmers Direct policy by the number of vehicles insured under the Farmers Direct policy but rather should be limited to the single $100,000 per person UM/UIM limits provided.

**B. <u>Farmers Direct's Policy Contains Express Valid Anti-Stacking Language Such That Defendant Yates Should Not Be Entitled To Stack The UM/UIM Limits Provided Under the Farmers Direct Policy</u>**

As noted above, in *Brewer*, the Mississippi Court of Appeals held that "the Supreme Court ruled insureds were now allowed to prohibit stacking by Class II insureds" and that "Since its 2005 *Meyers* decision, the Mississippi Supreme Court has allowed insurance contracts to prohibit stacking by a Class II insured like Brewer", as long as the policy being interpreted contains express anti-stacking language in it. And a simple review of the subject Farmers Direct policy shows that the Farmers Direct policy does in fact contain express, clear,

and unambiguous anti-stacking language policy regardless of the number of vehicles insured under their policy or the number of premiums charged.

The "LIMIT OF LIABILITY" provisions of the MISSISSIPPI UNINSURED MOTORIST COVERAGE ENDORSEMENT of the subject Farmers Direct policy provides as follows:

### LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, due to **BI** to any one person as the result of any one accident. This includes all damages sustained by any other person as a result of that **BI**. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of **BI** sustained by two or more persons resulting from any one accident.

If a single limit is shown in the Declarations for "each accident" this is the most **we** will pay for any one accident, including prejudgment and post-judgment interest.

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most **we** will pay regardless of the number of:
1. insureds;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

**B.** The lesser of the limits of this insurance or the amount payable under this endorsement will be reduced by any amount.
1. paid or which is payable on behalf of any liable parties.
2. Paid or which is payable under any workers' compensation, disability benefits, or similar laws.
3. Paid or which is payable under the:
   a. Liability Coverage;
   b. Medical Expense Coverage; or
   c. Personal injury Protection Coverage;
   of this policy.

**C.** No person is entitled to receive duplicate payments for the same elements of **loss** under this endorsement and any amount paid by or on behalf of any liable parties.

[See Exhibit B]

As shown above, the Farmers Direct policy very clearly and specifically states that the Limit of Liability shown in the Declarations for each person ($100,000 per person) is the most that Farmers will have to pay for any and all damages due to bodily injury to any one person (Defendant Yates) as a result of an accident and that the $100,000 per person limit stated on the Declarations Page is "the most we will pay regardless of the number of …vehicles shown in the Declarations…and premiums shown in the Declarations". Respectfully, it cannot be stated anymore clearly that Farmers Direct is specifically saying in its policy that the $100,000 per person UM/UIM coverage limit stated on its Declaration Page is the most that Farmers Direct will pay regardless of the fact that four (4) separate vehicles are insured under its policy and regardless of the fact that premiums were charged for four (4) separate vehicles under its policy. It cannot be stated any more clearly than it is.  As a result, it is clear that the Farmers Direct policy specifically states that Defendant Yates herein is limited to the $100,000 in Uninsured/Underinsured Motorist Coverage limit provided under its policy.  And after offsetting the $100,000 Liability Coverage payment being made under the policy, Farmers Direct does not owe any Uninsured/Underinsured Motorist Coverage to Defendant Yates herein.

## <u>CONCLUSION</u>

In *Meyers vs. Am. States Ins. Co.,* the Mississippi Supreme Court clearly held that Class II insureds are no longer are entitled to stack the Uninsured/Underinsured Motorist Coverage provided under a policy, and that prohibition on Class II stacking was just recently upheld by the Mississippi Court of Appeals in *Brewer v. Ms. Farm Bureau Cas. Ins*., as langas the policy

includes express anti-stacking language in it.  A simple review of the Farmers Direct policy shows that the Farmers Direct policy does in fact specifically state that the $100,000 per person Uninsured/Underinsured Motorist Coverage limit provided under that policy is the most that Farmers Direct would pay regardless of the number of vehicles insured under that policy, which is valid and express anti-stacking language policy.  As a result, Farmers Direct respectfully submits that this Court should enter an Order granting Summary Judgment in its favor by finding that Defendant Yates only has $100,000 per person Uninsured/Underinsured Motorist Coverage limits available to him under the subject Farmers Direct policy and that, after offsetting the $100,000 Liability Coverage payment being made by Farmers Direct to Defendant Yates, Defendant Yates is not entitled to any Uninsured/Underinsured Motorist Coverage under the subject Farmers Direct policy and/or that Farmers Direct does not owe any Uninsured/Underinsured Motorist Coverage to Defendant Yates as a result of the subject accident.

RESPECTFULLY SUBMITTED AND REQUESTED, this the 29th day of July, 2022.

**FARMERS DIRECT PROPERTY AND CASUALTY INSURANCE COMPANY**

By:    /s/ W. Wright Hill, Jr.       
         W. WRIGHT HILL, JR.

OF COUNSEL:

W. WRIGHT HILL, JR. (MSB# 9560)
JERNIGAN COPELAND ATTORNEYS, PLLC
970 Ebenezer Boulevard (39110)
Post Office Box 2249
Madison, MS  39130-2249
Telephone:  601-427-0021
Fax: 601-427-0051
Email: whill@jcalawfirm.com

**CERTIFICATE OF SERVICE**

I, the undersigned attorney for Plaintiff Farmers Direct Property and Casualty Insurance

Company, hereby certify that I have this day caused to be served, via the Court's ECF System, a

true and correct copy of the above and foregoing document to:

Lance Stevens
Stevens Law Group, PLLC
190 Gateway Drive, Suite A
Brandon, MS  39042
*Attorney for Defendant Jonathan Elijah Yates*

This the 29th day of July, 2022.

/s/ W. Wright Hill, Jr.
W. WRIGHT HILL, JR.