## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**FARMERS DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY F/K/A
METROPOLITAN DIRECT PROPERTY AND
CASUALTY INSURANCE COMPANY**                     **PLAINTIFF**


**VS.**                          **CAUSE NO. 3:22cv188-KHJ-MP**


**JONATHAN ELIJAH YATES**                            **DEFENDANT**


## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST FARMERS DIRECT


*COMES NOW*, the Defendant, and submits this memorandum in support of his Motion for Summary Judgment, pursuant to FED. RULE OF CIV. PRO. 56 and other relevant authority, and in support would show unto this Court the following:

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**A.  OVERVIEW OF RELIEF REQUESTED**. . . . . . . . . . . . . . . . . . . . . . . . 1

**B.  STIPULATION OF FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**C.  OTHER RELEVANT UNDISPUTED FACTS**. . . . . . . . . . . . . . . . . . 4

**D.  SPECIFIC RULES OF CONSTRUCTION**. . . . . . . . . . . . . . . . . . . . . 5

    1.  Interpretation in favor of insured, generally . . . . . . . . . . . . . . . . . . . . . 5

    2.  Uninsured motorist stacking is liberal, specifically . . . . . . . . . . . . . . . . 6

**E.  APPLICABLE UNINSURED MOTORIST LAW: STACKING** . 8

    1.  Stacking's first important distinction: Class I and Class II insureds . . . . 8

    2.  Stacking second important distinction:  Triggering v. coverage . . . . . . . 9

**F.  THE FARMER'S POLICY and *BREWER*** . . . . . . . . . . . . . . . . . . . 11

**G.  THE FARMER'S POLICY ILLEGALITY/AMBIGUITY** . . . . . . . 15

    1.  The purported limitation is illegal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    2.  The purported exclusion is vague and ambiguous . . . . . . . . . . . . . . . . . 16

**H.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## CASE AUTHORITY

*Alley v. N. Ins. Co.*, 926 So. 2d 906 (Miss. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172 (Miss.1990). . . . . . . . . . . . . 6

*Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148 (Miss. 2010) . . . . . . . . . . . . 5

*Atlanta Cas. Co. v. Payne,* 603 So. 2d 46 (Miss. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brewer by Brewer v. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.3d 721 (Miss. 2021) *cert. denied sub nom. Brewer v. Mississippi Farm Bureau Cas. Ins. Co.*, 329 So. 3d 1199 (Miss. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9, 11, 12, 13, 14, 15, 17

*Commercial Union Ins. v. Dairyland Insurance Co.*, 584 So2d 405 (Miss.1991). . . . . . 6

*Fidelity & Guar. Underwriters Inc. v. Earnest*, 699 So. 2d 585 (Miss. 1997). . . . . . 15, 17

*Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So. 2d 927 (Miss. 2002) . . . . . . . . . . . 13

*Government Employees Ins. Co. v. Brown*, 446 So.2d 1002 (Miss.1984). . . . . . . . . . . . . 6

*Guardianship of Lacy v. Allstate Ins. Co.*, 649 So. 2d 195 (Miss. 1995) . . . . . . . . . . . . . 5

*Harris v. Magee*, 573 So2d 646 (Miss.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092 (Miss. 1995) . . . . . . . . . . . . . . . . . . . . 5, 8

*Hartford Accident & Indemnity Co. v. Bridges,* 350 So2d 1379 (Miss.1977). . . . . . . . . 7

*Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So2d 456 (Miss.1971) . . . . . . . . . . . 5

*J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co,* 723 So. 2d 550 (Miss. 1998) . . . . 5

*Lewis v. Allstate Ins. Co.*, 730 So. 2d 65 (Miss. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lowery v. State Farm Mut. Auto. Ins. Co.*, 285 So2d 767 (Miss.1973). . . . . . . . . . . . 6, 15

*Mascarella v. U.S.F.&G. Co.*, 833 So2d 575 (Miss.2003). . . . . . . . . . . . . . . . 7, 11, 13, 14

*Matthews v. State Farm Mut. Auto. Ins. Co.*, 471 So.2d 1223 (Miss.1985). . . . . . . . . . . 5

*Meyers v. American States Ins. Co.*, 914 So.2d 669 (Miss. 2005) . . . . . . . . . . . 7, 11, 13, 15

*Mississippi Farm Bur.Cas. Ins. Co. v. Powell*, 336 So.2d 1079 (Miss. 2022) . . . . . . . . . . 5

*Monarch Insurance Company of Ohio v. Cook*, 336 So.2d 738 (Miss.1976) . . . . . . . . . . 6

*Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658 (Miss. 1994). . . . . . . . . . . . . . . . 6

*Omega Protein, Inc. v. Evanston Ins. Co.*, 336 So. 3d 128 (Miss. 2022). . . . . . . . . . . . . 5

*Parker v. Cotton Belt Insurance Co.*, 314 So.2d 3424 (Miss.1975). . . . . . . . . . . . . . . . . 6

*Pearthree v. Hartford Accident & Indem. Co.*, 373 So.2d 267 (Miss. 1979) . . . . . . . . . . 9

*Richards v. Allstate Ins. Co.*, 693 F.2d 502 (5th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . 15

*Thiac v. State Farm Mut. Auto. Ins. Co.,* 569 So.2d 1217 (Miss. 1990) . . . . . . . . 10, 17, 18

*Travelers Indem. Co. v. Chappell*, 246 So.2d 498 (Miss. 1971) . . . . . . . . . . . . . . . . . . . 17

*U.S. Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77 (Miss. 1997). . . . . . . . . . . . . . . 5, 6, 7, 8

*Wickline v. United States Fidelity & Guar.Co.*, 530 So. 2d 708 (Miss. 1988). . . . . . . 7, 18

*Williams v. Life Insurance Co. of Georgia*, 367 So.2d 922 (Miss.1979) . . . . . . . . . . . . . 6

## OTHER AUTHORITY

Jeffrey Jackson & Jason Childress, <u>Mississippi Insurance Law and Practice</u>
§ 18:20 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Phillips, Richard, T., <u> A Guide to Uninsured Motorist Insurance Law in
Mississippi</u>, 52 Miss.L.J. 255 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

## A.   OVERVIEW OF RELIEF REQUESTED

The Defendant in this declaratory action[1], Jonathan "Eli" Yates, seeks a determination that the uninsured/underinsured (UM/UIM) motorist policies written by the Defendant, Farmer's, "stack" or "aggregate" to provide Yates $400,000 in total UM/UIM motorist coverage for the July 18, 2020, motor vehicle accident grievously injuring him.[2] (See accident report, Exh. "6")

Let's please begin to foreshadow the conclusion.  In 2021, a unanimous appellate court[3] held:

> Thus, although our Supreme Court's precedents do make clear that a guest passenger does not have a statutory right to stack coverage for the purpose of determining uninsured/underinsured status, those cases do not prohibit stacking for the purpose of determining the amount of UM coverage that is available in a case  in which uninsured/underinsured status has been established.

*Brewer by Brewer v. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.3d 721, 730-731 (Miss. Ct. App. 2021)(J. Wilson, concurring).

Both sides agree, by virtue of an extensive joint stipulation of facts, that no genuine issue of material fact exists and this declaratory determination must be made as a matter of law.

---

[1] Complaint and Answer attached as Exh. "1" and "2."

[2] That $400,000 in uninsured motorist benefits would then be reduced by the $100,000 in liability insurance tendered for the accident.  This litigation is about $300,000.00 in UM/UIM coverage.

[3] The Mississippi Court of Appeals has ten (10) members.  The majority opinion in *Brewer* was written by Judge McCarty, joined by Judge Westbrooks and all members of the concurrence (unanimous).  The concurrence was written by Judge Wilson and joined by eight (8) other judges, *including McCarty*.  So the nine member concurrence is every bit the super-majority rule of law that the ten member "majority" is.  Nothing in the concurrence conflicts with the majority, making Judge Westbrooks' "hold out" a little baffling.  Nevertheless, quotes from the concurrence are duly noted in the citation.

**B.     STIPULATION OF FACTS**

Counsel for the parties have entered into a comprehensive stipulation of facts to be relied upon for determination of this purely legal issue.[4]

Those deemed critical, beyond the mere stipulation as to the authenticity of the relevant insurance documents and summary of the positions of the parties, are as follows:

1.     On July 18, 2020, Defendant Elijah Yates was riding as a guest passenger in a vehicle leased by Mitzi Birks and Garry Birks and being driven by their grandson, Camron Flynn, which was involved in a single vehicle accident on West Sowell Road in Madison County, Mississippi.

2.     The subject accident was caused by the negligence of Camron Flynn.

3.     At the time of the subject accident, the vehicle being driven by Camron Flynn and occupied by Defendant Elijah Yates was insured under a personal automobile insurance policy issued by Plaintiff Farmers Direct Property and Casualty Insurance Company (formerly known as Metropolitan Direct Property and Casualty Insurance Company), bearing Policy No: 9564110730.

4.     The subject automobile insurance policy issued by Farmers Direct Property Casualty Insurance Company also provided Uninsured/Underinsured Motorist Coverage with a limit of $100,000 per person.

5.     The subject automobile insurance policy issued by Farmers Direct Property and Casualty Insurance Company insured four (4) total vehicles, specifically a 2020 Nissan Altima (the vehicle involved in the subject accident), as well as a 2005 Dodge Magnum, a 1996 Pontiac Firebird, and a 2013 Jaguar XJL.

6.     Separate premiums were paid for the uninsured/underinsured motorist coverage under each of the four (4) vehicles insured under the subject policy.

7.     As a guest passenger in the subject vehicle insured by Farmers Direct Property and Casualty Insurance Company, Elijah Yates is considered an "insured" for purposes of Uninsured/Underinsured Motorist Coverage.

---

[4]The complete list of stipulated facts is attached as Exh. "3."

8.  Farmers Direct Property and Casualty Insurance Company, as an uninsured/underinsured motorist, is entitled to a liability set off or off set, sometimes referred as the "*Keuhling* or set off or off set", for the $100,000 Liability Coverage being paid to Elijah Yates against any Uninsured/Underinsured Motorist Coverage which also may be owed by Farmers Direct Property and Casualty Insurance Company under the subject policy.

9.  In addition to being an "insured" for the purposes of Uninsured/Underinsured Motorist Coverage under the aforementioned Farmers Direct Property and Casualty Insurance Company policy, Elijah Yates is also insured under two other separate personal automobile insurance policies issued by State Farm Mutual Automobile Insurance Company, both of which provide $25,000 per person Uninsured/Underinsured Motorist Coverage.

10. As a resident family member of State Farm Mutual Automobile Insurance Company's named insureds[2], Elijah Yates is entitled to a total of $50,000 in uninsured/underinsured coverage under the two above referenced policies issued by State Farm Mutual Automobile Insurance Company.

11. In light of Elijah Yates having $100,000 in Uninsured/Underinsured Motorist Coverage provided under the aforementioned policy issued by Farmers Direct Property and Casualty Insurance Company and $50,000 in Uninsured/Underinsured Motorist Coverage under the aforementioned policies issued by State Farm Mutual Automobile Insurance Company, Mr. Yates has at least $150,000 combined Uninsured/Underinsured Motorist Coverage available to him as a result of the subject accident.

12. With Camron Flynn, the at-fault motorist who caused this accident, having only $100,000 per person liability coverage limits, Camron Flynn is an "underinsured motorist".

13. Elijah Yates has suffered in excess of $450,000 in economic and non-economic damages as a proximate result of the subject accident.

14. The sole issue to be resolved in this matter is whether or not Eli Yates, as a Class II "insured" under the Farmers Direct Property and Casualty Insurance Company policy is entitled to stack the $100,000 per person Uninsured/underinsured motorist Coverage limit by the four (4) separate vehicles insured under that policy or whether Mr. Yates is limited to the single $100,000 limit provided on the vehicle involved in the subject accident.

## C.    OTHER RELEVANT UNDISPUTED FACTS

The "competing" authorities on the issue at hand are easier to digest when other issues, be they practicalities or embedded equities, can be understood.

By way of example, young Mr. Yates has incurred $882,245.34 in known medical expenses to date related to this horrific accident.[5]  While we have not burdened the record with dozens of EOB's and balance billing, the court can take judicial notice that annual deductibles and co-pays will leave this insured family with some financial burden.  Further, more specifically documented, the multiple heath insurance carriers which paid Yates' bills have submitted notices of liens against the third party insurance proceeds in the interim amounts of $274,323.40, $9,567.46 and $8,804.59.[6]  Over $290,000.00 in liens.

Practicalities like these give a reader a greater sense of the necessity of the liberal reading of coverage clauses and the "positive gloss" of stacking on our Uninsured Motorist Act which has always been a part of that legislative landscape. The "rules of construction" are addressed below.

---

[5]See Exh. "10."

[6]See Exhibits "7," "8," and "9." Yates' counsel is actively in the process of negotiating with these entities.

**D.**   **SPECIFIC RULES OF CONSTRUCTION**

1.   <u>Interpretation in favor of insured, generally</u>

Recently restated in *Omega Protein, Inc. v. Evanston Ins. Co.*, 336 So. 3d

128, 131 (Miss. 2022),

> "[I]f a contract contains ambiguous or unclear language, then ambiguities
> must be resolved in favor of the non-drafting party. Ambiguities exist when
> a policy can be logically interpreted in two or more ways, where one logical
> interpretation provides for coverage." *Architex Ass'n, Inc. v. Scottsdale Ins.
> Co.*, 27 So. 3d 1148, 1157 (Miss. 2010) (quoting Martin, 998 So. 2d at 963).
> When ambiguities are at play in an insurance contract, we ask "what a
> reasonable person … in the insured's position would have understood the
> terms to mean." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So.
> 2d 550, 552 (Miss. 1998).

*Omega* and, more recently, *Mississippi Farm Bur. Cas. Ins. Co. v. Powell*, 336

So.2d 1079 (Miss. Apr. 7, 2022), reiterate the general proposition that exclusions or

restrictions in insurance policies are viewed even more harshly.[7]   "More

importantly, '[l]anguage in exclusionary clauses must be 'clear and unmistakable,'

as those clauses are strictly interpreted.'" *Omega* at 131.[8]

---

[7]Also citing  *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co,* 723 So. 2d 550,
552 (Miss. 1998);  *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998).  *See also
Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092, 1094 (Miss. 1995)[UM claim]; *Matthews
v. State Farm Mutual Automobile Ins. Co.*, 471 So.2d 1223, 1225 (Miss.1985);
*Guardianship of Lacy v. Allstate Ins. Co.*, 649 So. 2d 195, 197 (Miss. 1995).

[8]The Court in *U.S.F.&G. v. Ferguson* truly put insurance transactions into the
real world when they opined: "To say that an insured may contract with his insurance
company to limit stacking is disingenuous. Insurance contracts essentially are contracts
of adhesion. The insured has only two choices in "negotiating" the terms of his
policy—he may accept the terms offered by his insurance company, or he may reject
them and go to a different insurance company. When the entire insurance industry
writes its policies to preclude stacking of UM coverage, attempting to circumvent case
law and defeat public policy, the insured is denied any choice whatsoever. This Court has
previously recognized the need to protect insureds because of their uneven bargaining

To be clear, insurance contracts and exclusions are to be construed *strongly* against the insurer and in favor of the insured. *Williams v. Life Insurance Company of Georgia*, 367 So.2d 922, 925 (Miss.1979). And *any* ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994); *Government Employees Insurance Company v. Brown*, 446 So.2d 1002, 1006 (Miss.1984); *Monarch Insurance Company of Ohio v. Cook*, 336 So.2d 738, 741 (Miss.1976).

2.   Uninsured motorist stacking is liberal, specifically

The same rules have been repeated in decisions specifically addressing UM coverage.

> "The statute is intended to be remedial in nature and thus broadly construed. *Parker v. Cotton Belt Insurance Co.*, 314 So.2d 342, 344 (Miss.1975). Ambiguities in policy provisions are to be construed in favor of the injured insured motorist. *Commercial Union Insurance Co. v. Dairyland Insurance Co.*, 584 So.2d 405, 408 (Miss.1991); *Hartford Accident & Indemnity Co. v. Bridges,* 350 So.2d 1379 (Miss.1977). Where the policy provision conflicts with the statute, the statute prevails. *Lowery v. State Farm Mutual Automobile Insurance Co.*, 285 So.2d 767 (Miss.1973)."

---

power in dealing with insurance companies: It is a matter almost of common knowledge that a very small percentage of policy holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous and in their numerous conditions and stipulations furnishing what may be veritable traps for the unwary. Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. *Andrew Jackson Life Insurance Co. v. Williams*, 566 So.2d 1172, 1188–89 (Miss.1990) (citations omitted)." *U.S. Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77, 80 (Miss. 1997).

*Atlanta Cas. Co. v. Payne,* 603 So. 2d 343, 345–46 (Miss. 1992).  See generally, Phillips, A Guide to Uninsured Motorist Insurance Law in Mississippi, 52 Miss.L.J. 255, 259–265 (1982).

Further, our Supreme Court has endorsed "stacking" or "aggregating" uninsured motorist coverage of multiple policies since their decision in *Harthcock v. State Farm Mutual Automobile Insurance Co.,* 248 So.2d 456 (Miss.1971). In fact, stacking is so firmly imbedded in Mississippi uninsured motorist law that it "has become a positive gloss upon the Uninsured Motorist Act." *Wickline v. U.S. Fidelity & Guar. Co.,* 530 So.2d 708, 714 (Miss.1988).  See *U.S. Fid. & Guar. Co. v. Ferguson,* 698 So. 2d 77, 79 (Miss. 1997).[9]

A most comprehensive and compelling statement was made by the Court in *U.S. Fid. & Guar. Co. v. Ferguson,* 698 So. 2d 77, 80 (Miss. 1997), as follows:

> "[T]his Court reiterated its positive stand in favor of stacking: Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking sought here, i.e., stacking multiple coverages within a single policy, has been mandated. As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.
> ....
>
> Uninsured motorist coverage is designed to provide innocent injured motorists a means to recover all sums to which they are entitled from an uninsured motorist. The statute is to be liberally construed so as to achieve compensation.
> ....

---

[9] The cases cited in this section, with the exception of *Brewer,* are all before *Mascarella v. U.S.F.&G. Co.,* 833 So.2d 575 (Miss.2003) and *Meyers v. American States Ins. Co.,* 914 So.2d 669 (Miss. 2005).  Both sides will note the importance of that point in time, where it was believed (incorrectly) that the law took a specific anti-stacking turn.  *Brewer,* cited *infra,* will make it clear that *Mascarella* and *Meyers* have been greatly misunderstood.

Unlike other jurisdictions, such as Alabama, Minnesota and Montana, which have legislatively mandated that stacking is contrary to public policy, stacking is retained in Mississippi as a "positive gloss" of our UM statute. *Harris v. Magee*, 573 So.2d at 653–55 (Miss.1990) (citations omitted)...

*U.S. Fid. & Guar. Co. v. Ferguson*, at 80 (Miss. 1997).

The *Ferguson* court makes the most affirmative statement in the insured's favor by tying together the disfavor of UM contract limitations and stacking when it concluded, "In previous cases before this Court, we have allowed aggregation of UM coverage despite anti-stacking clauses based upon ambiguity in the language of the policy or the fact that separate premiums were charged for each car." *U.S. Fid. & Guar. Co. v. Ferguson*, 698 So. 2d 77, 79 (Miss. 1997).[10]

## E.   APPLICABLE UNINSURED MOTORIST LAW: STACKING

### 1.   Stacking's first important distinction: Class I and Class II insureds

While the Uninsured Motorist Act makes no reference to "classes" of insureds, the case law developed a "Class I" and "Class II" dichotomy early on. And while even this early development traveled a Byzantine path for several years between 1992 and 1997, it has returned to its roots for over two decades. It is simple to explain.

A "Class I" insured is the named insured[11] and his/her resident relatives.[12]

---

[10]USF&G tried to limit stacking by charging separate premiums, a practice that became quite in vogue. Farmer's also charged separate premiums, as admitted in the stipulations herein. (Exh. "3," ¶8). "Where separate premiums are paid, the presumption arises in favor of aggregation of uninsured motorist coverage, notwithstanding clear and unambiguous language to the contrary. *Hartford Acc. & Indem. Co. v. Bridges, 350 So.2d 1379, 1381 (Miss.1977)." Harrison v. Allstate Ins. Co.*, 662 So. 2d 1092, 1094 (Miss. 1995).

[11]Even this "named insured" definition still causes fits when a policy is written in the name of a corporation or limited liability company. That octopus does not have to be

Carriers are prohibited from writing policies that limit stacking to Class I insureds.

A "Class II" insured is a non-resident relative who is a permissive driver of the insured vehicle or a passenger.  As explained in detail herein, a carrier can exclude stacking for a "Class II" insured, but must do so with clear, unambiguous language within the portion of the policy it is to apply to.[13]

Enter the unanimous decision in *Brewer by Brewer v. Miss. Farm Bureau Cas. Ins. Co.*, 328 So.3d 721 (Miss. Ct. App. 2021) *cert. denied sub nom. Brewer v. Mississippi Farm Bureau Cas. Ins. Co.*, 329 So. 3d 1199 (Miss. 2021) barely one year ago.[14]

2.  <u>Stacking second important distinction:  Triggering v. coverage</u>

*Brewer*, with its strange mixture of unanimous majority and near-unanimous concurrence, makes it clear that previous thought–suggesting Class II insureds simply cannot stack the host vehicles coverages– is misguided.

The key, the difference between triggering and coverage, is best explained by example.

---

wrestled with in the case *sub judice*.

[12]Alas, the definition of "resident" and "relative" (think divorced parents, college students, large family parcels with separate structures) can also be a bear, even currently, though the overwhelming majority of cases are simply and inarguable.

[13]If a carrier, through the language of its contract, expands the definition of either, providing more coverage to more people, they may do so.  *Pearthree v. Hartford Accident & Indem. Co.*, 373 So.2d 267, 271 (Miss. 1979).

[14]*Brewer* succinctly describes the Class I and Class II distinction addressed above. *Brewer* at 724.

A wreck occurs where a non-resident relative passenger, such as Yates, is injured in a host vehicle. In the case of Yates, the host vehicle is owned by the family of the faulted driver, the Birks family. (Exh. "5") By way of a quite germane example, let us suppose the faulted driver has $100,000 in liability insurance. How much UM/UIM coverage must the passenger have to "trigger" UM/UIM coverage?

The math is easy. First, how much UM/UIM coverage is on the vehicle? Let's suppose the host vehicle has $100,000 in UM/UIM coverage, as is the case in Yates. That's not enough. If Eli Yates had no other UM coverage, outside of the $100,000 coverage provided on that Birks family vehicle, he would not be allowed to stack their coverages. He would not "trigger" stacking those policies.[15]

But such is not the case here. If the theoretical passenger had, let's say, $50,000 in UM/UIM coverage for vehicles at his own home, where he is an insured or a resident relative, he can stack the $100,000 in the host vehicle's UM/UIM with the $50,000 in the passenger's home. The theoretical passenger, who strongly resembles Yates, then has $150,000 in UM/UIM which, when compared to only $100,000 in liability coverage, makes the passenger "underinsured." It "triggers" all UM coverage available. He becomes an "insured" under the host vehicle's policy.[16]

It is a simple formula. If host vehicle UM/UIM coverage + home UM/UIM coverage > liability coverage, Class II passenger = insured. Coverage = all coverages

---

[15]The earliest know case involving triggering is *Thiac v. State Farm Mut. Auto. Ins. Co.,* 569 So.2d 1217 (Miss. 1990), which is specifically cited in *Brewer.*

[16]This example is identical to Yates. Farmer's has stipulated that the coverage has been triggered and Yates is an insured under their policy. (Exh. "3," ¶¶5, 6, 7 and 10).

on host vehicle policy stacked + all coverages at home.

If host vehicle UM/UIM coverage + home UM/UIM coverage < liability coverage, there is no UM/UIM coverage, period.

The misguided conclusion of the past (Class II cannot stack) was largely based upon language of *Mascarella* and *Meyers*, previously cited. While the breadth of the analysis in *Brewer* is wide and brilliant, an elementary, narrow conclusion is reached. *Mascarella* and *Meyers* did prohibit Class II insureds from stacking *for the purposes of triggering only*.[17] This leads to the next logical conclusion that, where a Class II insured has triggered coverage, *stacking is allowed to determine the amount of the stacked coverage*. *Brewer* at 729-730.

## F.   THE FARMER'S POLICY and *BREWER*

In *Brewer*, a Class II insured (Allison) was driving one of four (4) vehicles insured under a policy issued to the McClain family by Farm Bureau when injured by an underinsured driver. *Id.* at 727. Recall that Yates was a Class II insured riding in one of four (4) vehicles insured under a policy issued to the Birks family by Farmer's Insurance when injured by an underinsured driver.

*Brewer* is a veritable treatise on the rules of construction in insurance contracts supporting the stacking position. It reinforces the legion of cases cited in Section D., *supra*. "Fundamental law" holds that the contract language is "construed *heavily* against the insurer;" exceptions to coverage are construed *"even more stringently;"* construed favorable to the insured *wherever reasonably possible,*

---

[17]*Brewer* at 726.

*particularly exclusion clauses*;" attempts to limit insurer's coverage "*must fail* when it deprives the insured of benefits for which a premium was paid." *Brewer* at 723-724 (citations omitted)[*emph. added*].

 *Brewer* is the framework with which one must analyze the provision in the Farmer's policy that they allege limits stacking for Yates.  Farmer's details the clause in their Complaint, Exh. "1," ¶7:

> **LIMIT OF LIABILITY**
> **A.** The limit of liability shown in the Declarations for "each person" is the most we will pay for all damages, including prejudgment and post-judgment interest, due to BI to any one person as the result of any one accident. This includes all damages sustained by any other person as a result of that BI.  Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of BI sustained by two or more persons resulting from any one accident.
>
> If a single limit is shown in the Declarations for "each accident" this is the most we will pay for any one accident, including prejudgment and post-judgment interest.
>
> The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.
>
> This is the most we will pay regardless of the number of:
> 1. insureds;
> 2. claims made;
> 3. vehicles shown in the Declarations;
> 4. premiums shown on the Declarations; or
> 5. vehicles involved in the accident.

 We should begin with Farm Bureau's arguments on appeal in *Brewer*, because it is the analytical annihilation of Farmer's position herein and dispositive of our issue.  Undoubtedly, State Farm will ultimately rely upon the same trio of cases herein as Farm Bureau did in *Brewer*.

Farm Bureau relied on *Mascarella*, *Meyers*, and *Glennon*[18] for its argument that state law prohibited Class II insureds from stacking UM benefits. In contrast to the present case, "*Mascarella*, *Meyers*, … and *Glennon*[ ] only consider whether the injured party is an employee of the named insured or is the named insured." *Alley v. N. Ins. Co.*, 926 So. 2d 906, 910 (¶10) (Miss. 2006). Accordingly, these cases do not require us to reach a contrary result.

*Brewer* at 726.

These triplets do not address the amount of coverage one is entitled to when stacked.  They are all cases on whether stacking the vehicle coverage with their residential coverage prohibited the claimant from "triggering" UM/UIM coverage at all.[19]

Taking them in chronological order, the *Brewer* Court first enlightens us on how *Glennon* supports Yates' claim to stacking:

The Supreme Court held in *Glennon* that Class II insureds were allowed to stack the host vehicle's UM benefits provided that the coverages "being stacked were all contained in one policy." *Id*. at 932-33 (¶14). There, two employees were struck by another car while driving a vehicle owned by their employer. *Id*. at 929 (¶2). They then sued and "attempt[ed] to stack the UM coverage of their employer's three vehicles that were insured on three separate policies." Id. at 932 (¶14). However, because the vehicles were covered under separate policies, the employees were not permitted to stack. *Id*. at 932-33 (¶14).

*Brewer* at 724.

_____

[18]*Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So. 2d 927 (Miss. 2002).

[19]The cases that Farm Bureau cites "deal with stacking for the purposes of determining uninsured status…Furthermore, the distinction is important in a case such as this one because "[t]he rules for stacking for the purposes of recovery differ from the rules for stacking for the purposes of determining uninsured status." Jeffrey Jackson & Jason Childress, <u>Mississippi Insurance Law and Practice</u> § 18:20, at 582 (2020 ed.) (emphasis added).  *Brewer* at 729 [J. Wilson, concurring]

In other words, but for the fact that the UM coverage on the employer's three vehicles were in separate policies, *Glennon* was legally allowed to stack.  In Yates, the UM policies are not separate.  Conclusion?  They stack.

*Brewer* casts the same mirror on the next decision, *Mascarella*, reaching the same conclusion:

> Moreover, in *Mascarella*, the Supreme Court reaffirmed—albeit in dicta—that a guest passenger may stack coverage on other vehicles insured under the host's policy for the purpose of determining the amount of recovery. *Mascarella*, 833 So. 2d at 579 (¶11). The policy in *Mascarella* included a limit of liability similar to the Limit of Liability in the Farm Bureau policy in this case. *Id.*[20] **The Supreme Court stated that such a provision "clearly" shows that "an insured who was injured by an underinsured vehicle can stack the UM coverage limits of all the vehicles covered by the policy to allow for full recovery of damages."** *Id.* The Court also stated that specific stacking issue was not before the Court because the case "involve[d] only the threshold question" whether the insured could stack coverage in order "to have the tortfeasor's vehicle declared underinsured." *Id.* at (¶12).

*Brewer* at 730 [emph. added].

Because the *Mascarella* Court never got past the threshold triggering issue, the following passage has been largely ignored until today.  "[Y]es, an insured who was injured by an underinsured vehicle can stack the UM coverage limits of all the vehicles covered by the policy to allow for full recovery of damages. Since the

---

[20]Here is the limits of liability provision from *Mascarella*.  It is quite similar to Farmer's.  "Regardless of the number of "autos", "insured's", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of UNINSURED MOTORIST COVERAGE shown in the declarations or schedules. If there is more than one covered "auto", our limit of insurance for any one "accident" is the sum of the limits for those "autos" you own which are covered "autos." *Mascarella* at 579.

question before us involves only the threshold question, this second passage sheds no light on the matter." *Id.* at 575.

So, just as in *Glennon*, what is the result if *Mascarella*, like Yates, had met the underinsured threshold?  Those policies stack.

*Brewer* then makes very short shrift of *Meyers,* simply concluding that "[*Meyers*] only consider(ed) whether the injured party is an employee of the named insured or is the named insured." *Brewer* at 726, *citing Alley v. N. Ins. Co.,* 926 So. 2d 906, 910 (¶10) (Miss. 2006).  Meanwhile, the concurrence states, "However, *Meyers* did not overrule *Earnest* or the rule [Class II stacking and the "more liberal fund for recovery"] summarized above. *Id.* at 730.

## G.   THE FARMER'S POLICY ILLEGALITY/AMBIGUITY

### 1.   <u>The purported limitation is illegal</u>

Just like the policy in *Brewer*, the phrase "Class II" insured in not included in the Farmer's policy. *Brewer* at 728.  The purported anti-stacking policy language in the Farmer's policy is not limited to Class II insureds.

The Farmer's provision prohibits *all* stacking, *even Class I insureds*.  This is irrefragably illegal.  Farmer's will concede that Class I stacking cannot be limited by contract.

Illegal exclusions in an insurance policy are void.  *Lowery v. State Farm Mut. Auto. Ins. Co.*, 285 So.2d 767 (Miss. 1973); *Richards v. Allstate Ins. Co.*, 693 F.2d 502, 505 (5th Cir. 1982).

The argument should end here.  The provision is invalid.  Period.

2.      The purported exclusion is vague and ambiguous

The subject exclusion, titled LIMITATION OF LIABILITY, is far more than problematic.  The word "LIABILITY" is not defined in the Definitions section of the policy, at pages 1 of 16 to 4 of 16 of the liability policy, or in the definition section of the two uninsured motorist endorsements, at pages 1 of 4 of the first UM endorsement and page 1 of 2 of the second UM endorsement.

The significance of this clumsy or lazy drafting omission is magnified by the specific excerpt at issue—the anti-stacking provision.  It states, "[t]he limits of **liability** shown in the Declarations for "each person" is the most we will pay for all damages...." (Exh. "4," page 2 of 4 of Endorsement AE 40MS 0814).  The provision also addressing **liability** in the "per accident" context.  Following that Declarations roadmap, the ambiguity becomes even more evident.  The only mention of "liability" in the Declarations page (Exh. "5," below) is the **Liability** section of the declaration, which, of course, is followed by a per person and per accident limit.

| Coverage Description | Applicable Limits | | Annual Premiums | | | |
|---|---|---|---|---|---|---|
| | | | 2020 NISSA | 2005 DODGE | 1996 PONTI | 2013 JAGUA |
| Liability | | | | | | |
| Bodily Injury | $ | 100,000 Each Person/ | | | | |
| | $ | 300,000 Each Accident | 194 | 176 | 251 | 222 |
| Property Damage | $ | 100,000 Each Accident | 115 | 103 | 147 | 133 |
| Medical Expense | $ | 5,000 Each Person | 34 | 30 | 34 | 36 |
| Uninsured Motorists | | | | | | |
| Bodily Injury | $ | 100,000 Each Person/ | | | | |
| | $ | 300,000 Each Accident | 119 | 119 | 119 | 119 |
| Property Damage | $ | 50,000 Each Accident | 34 | 34 | 34 | 34 |

By all indications, other than its placement in the policy, this limitation addresses liability coverage in some manner and is devoid, other than placement, of any of the uninsured motorist nomenclature–even for a sophisticated reader. This enigmatic wording would be easily clarified by referring to the limitation as "the limits of uninsured motorist benefits" or "limits of UM damages."[21]  But Courts are not allowed to re-write contracts to repair ambiguities.  *Brewer* at 726, citing *Travelers Indm. Co. v. Chappell*, 246 So.2d 498, 510 (Miss. 1971)["This Court does not rewrite contracts where they are not illegal, immoral or contrary to established public policy."]

This provision is ambiguous.  It is not "clear and unmistakable" to the "ignorant" and "wary" customer.

## H.   CONCLUSION

Perhaps the easiest way to conclude is with yet another lengthy quotation from *Brewer*.

> When, as in this case, a guest passenger, "stacking other applicable coverage, can demonstrate the tortfeasor was underinsured," the guest passenger "will be able to recover UM benefits from all vehicle coverages including the coverage on the separate vehicles of the host driver not involved in the accident." Jackson & Childress, supra, § 18:24, at 587 (emphasis added). Our Supreme Court summarized this rule in *Fidelity & Guaranty Underwriters Inc. v. Earnest*, 699 So. 2d 585 (Miss. 1997):
> [O]ur State's UM law ... establish[es] a more liberal standard with regard to the amount of recovery available to a UM insured than for determining initial eligibility for UM benefits. In *Thiac v. State Farm Mut. Auto. Ins. Co.*, 569 So. 2d 1217, 1220 (Miss. 1990), this Court held that, for purposes of determining

---

[21]If the Court is wondering how Farmer's could have been so shortsighted, the answer may be simple laziness (or hubris?).  This provision is a "cut and paste" of the limitations provision in the Liability section of the policy at pages 5-6 of 16 in Exh. "4." Identical.  That language is perfectly suited for liability, but not the UM endorsement.

whether a given vehicle is underinsured, "we look no further than the guest passenger's own coverage and the coverage on the host vehicle." This Court in *Thiac* reaffirmed an earlier holding in *Wickline v. United States Fidelity & Guaranty Co.*, 530 So. 2d 708 (Miss. 1988)], however, that, once a given vehicle is determined to be underinsured, the amount of recovery available to the insured is determined by stacking not only the guest passenger's coverage and the coverage on the host vehicle, but also other vehicles covered by the host's policy. *Thiac*, 569 So. 2d at 1220-21. This Court's decision today thus establishes a more liberal "fund" for recovery by a UM plaintiff who has met the statutory UM eligibility requirements in a manner similar to that adopted by this Court in *Wickline/Thiac*.

*Brewer* at 729–30.

The rules of construction, both general and specific to UM language, the liberal application of the Uninsured Motorist Act, the strength of the *Brewer* analysis and the invalid or ambiguous anti-stacking language of the Farmer's policy all demand the conclusion urged by Yates. That conclusion is that Yates is entitled to stack the four (4) $100,000 UM/UIM policies of the Farmer's policy to provide a net $300,000 in coverage for Yates' injuries.

<div style="margin-left:40%">

Respectfully submitted,

JONATHAN ELIJAH YATES


By:  */s/ Lance L. Stevens*
ATTORNEY FOR DEFENDANT

</div>

Lance L. Stevens
Bar. No. 7877



lance@stevenslawgrouppllc.com

## CERTIFICATE OF SERVICE

I, Lance L. Stevens, attorney for the Defendant, do hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

<div align="center">

W. Wright Hill, Jr., Esq.
JERNIGAN COPELAND ATTORNEYS, PLLC
whill@jcalawfirm.com

</div>

RESPECTFULLY SUBMITTED and SO CERTIFIED, this the 29th day of July, 2022.

By:    */s/Lance L. Stevens*
       ATTORNEY FOR DEFENDANT

Lance L. Stevens
Bar. No. 7877



lance@stevenslawgrouppllc.com
190 Gateway Drive, Ste. A
Brandon, MS 39042
601.829.6618 [phone]
601.629.6623 [fax]